## CIRCUIT COURT OF STAFFORD COUNTY

Stafford Meadows Condominium
Unit Owners Association

v.

Stafford Meadows, Inc.

December 9, 1992

Case No. (Law) 5731–89

By Judge James W. Haley, Jr.

This letter opinion deals solely with defendants' demurrer on the ground that the plaintiff condominium association lacks standing to proceed against defendant developer declarants[1] on various theories concerning an alleged failure by defendants to reserve Phase 21 of the condominium "as open space . . . [which] may be developed as a recreational and community facility servicing the condominium as was set forth in the public offering statement dated August 9, 1983."

Defendants maintain that the provisions of § 55–79.80(b1) (now § 55–79.80(B)) granting a condominium association standing to take legal action with respect to "common elements"[2] do not apply for causes of action arising during the period of "declarant control reserved pursuant to § 55–79.74(a)." Defendants maintain this period of declarant control under the statute did not as a matter of law end until August 9, 1988, five years subsequent to the date of the public offering statement and during which the actions and representations of which the association complains occurred.

Defendants rely upon *Rotunda Cond. Owners v. Rotunda Associates*, 238 Va. 85, 380 S.E.2d 876 (1989), for the proposition that the

---

[1] A "Declarant" is any person who offers to dispose of a condominium unit not previously disposed of . . . or applies for registration of the condominium. Section 55–79.41.

[2] "Common elements" mean all portions of the condominium other than the units themselves. Section 55–79.41.

claim is that of individual unit owners, not the association. This reliance is misplaced.

In *Rotunda*, the court stated:

> We held in *Chesapeake House v. Va. National Bank*, 231 Va. 440, 442, 344 S.E.2d 913, 915 (1986), that condominium unit owners' associations had no authority to bring representative or derivative actions to vindicate the rights of individual condominium unit owners until the Condominium Act was amended by the adoption of Code § 55–79.80(b1), effective July 1, 1981. That subsection provides, in pertinent part, that: "the executive organ of the unit owners' association, if any, and if not, then the unit owners' association itself, shall have the irrevocable power as attorney-in-fact on behalf of all the unit owners . . . to assert, through litigation or otherwise, defend against compromise, adjust, and settle any claims or actions related to common elements . . . ."
>
> The controlling question then is whether Code § 55–79.80(b1), which took effect between the time the rights of action accrued and the date this action was filed, operates to transfer the individual owners' rights to the Association. The Association argues that the statute is merely procedural, appointing an "attorney-in-fact" to vindicate the individual owners' rights and that it neither creates nor abolishes any rights of action. Therefore, the Association contends, the statute should apply retrospectively so as to affect rights accrued before its effective date. The Developer argues that the statute is substantive in nature and could not constitutionally apply to vested or substantive rights which had accrued before its effective date. 238 Va. at 88–89.

The court held the individual unit owners rights to causes of action which occurred before the enactment of § 55–79.80(b1) effective July 1, 1981, could not be retrospectively transferred to the association.

In the instant case, all causes of action arose subsequent to the enactment of § 55–79.80(b1), and the court in *Rotunda* recognized the standing of the association to proceed for *post* July 1, 1981, causes of action in a footnote at 238 Va. 89.

Two other cases offer guidance. In *Nido v. Ocean Owners Council*, 237 Va. 664, 348 S.E.2d 252 (1989), the precise issue was whether a

unit owner could sue the association for money damages in contract and/or tort for the failure of repairs made by the association to a common area, which led to rain damage to his individual unit. In its opinion, the court noted that:

> During a two-day trial, the evidence showed that the Council had previously sued the developer of the condominium for construction defects . . . [which were] . . . water leakage from the common areas. 237 Va. at 665–666.

In *Frantz v. CBI Fairmac Corp.*, 229 Va. 444, 331 S.E.2d 390 (1985), the issue was:

> the authority of a condominium unit owners' association to compromise, over the objection of individual unit owners, a claim against the condominium developer.[3] 229 Va. at 445.

The claim the association compromised was one against the developer for a violation of § 55–79.90, which requires full disclosure in a public offering statement:

> by representing to prospective purchasers that a 3.3-acre parcel of land, which appeared to be included in the condominium project, would be improved as a park for use of unit owners when in fact the parcel was not part of the condominium project, was zoned for commercial use, and was intended by Fairmac to be sold for commercial development. 229 Va. at 446.

While resolution of the standing issue raised in the instant case by demurrer was not a portion of the *ratio decidendi* in either *Nido* or *Frantz*, the factual recitation in each makes clear that for claims arising post July 1, 1981, a unit owners' association does have standing to take legal action against the declarant, even if those claims arose during a period of time when the declarant necessarily had reserved control pursuant to § 55–79.74(a).

In *Grillo v. Montebello Condominium Owners Assoc.*, 243 Va. 475, 477, 416 S.E.2d 444 (1992), the court, in dealing with an issue arising under The Virginia Condominium Act, stated:

> We have repeatedly stated the principles of statutory construction that we must apply when a statute, such as Code § 55–79.74:1, is clear and unambiguous.

---

[3] The court held the association had such authority.

"While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import, the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."

*Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990), quoting *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934). 243 Va. at 90.

To construe § 55–79.80(b1) in the manner defendants here urge would deprive an owners' association standing to enforce the representations made by the developer to prospective purchasers as to what portion of the condominium will be reserved as common elements for the benefit of each. The Legislature did not intend such a result. Accordingly, the demurrer challenging the association's standing is overruled.